UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

CALVIN COLEMAN
            Plaintiff

        VS                                          Civil Action No:_____


DEPT. PUBLIC SAFETY AND CORRECTION
(STATE OF LOUISIANA)
SECRETARY JAMES M. LEBLANC
WARDEN: DARREL VANNOY
DEPUTY WARDEN: KEVIN BENJAMIN
ASST. WARDEN: TRACY FALGOUT
L.S.P. MEDICAL DIR.,:DR. RANDY LAVESPERE
L.S.P. MENTAL HEALTH SPEC. MATTHEW: DR. GAMBLE
L.S.P. CTP. LARRY SIMON
            Defendants


MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION


In determining whether a preliminary injunction should issue, a Court must consider whether the party seeking the injunction has demonstrated that 1) It has a reasonable likelihood of success on the merits of the underlying claim. 2) No adequate remedy at law exist. 3) Plaintiff will suffer irreparable harm if the preliminary injunction ids denied. 4)The irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted. 5) the preliminary injunction will not harm the public interest.

1.      **There is a reasonable likelihood that plaintiff will succeed on the merits in this case.**

The threshold for showing a reasonable likelihood of success is low. Plaintiff need only demonstrate a better then negligible chance of succeeding, Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. _____ Herein Plaintiff is very likely to prevail on the merits of said claims.

While the Eighth Amendment requires Prison Officials to protect the health and the safety of inmates, in which they may not act with deliberate indifference to the deprivation of a basic human need see Framer v. Brennan, 511 U.S. 825 (1994) Whereas the U.S. Supreme Court ruled In Hudson v. MacMillan, 503 U.S. 1, 9 (1992) what's a serious medical need consist of which in Wellman v. Faulkner, 715 F. 2d 269, 272-73 (7th Cir. 1983)("treatment of the mental disorder of mentally disturbed

1

inmates is a serious medical need")

Plaintiff averts that he have established herein an Eighth Amendment violation of cruel and unusual punishment. Where as, by Angola Prison Officials practice of placing two practically naked mental ill suicidal and homicidal inmates in the same cell together, amounts to a showing of deliberate indifference with an obvious knowing disregard---to a substantial risk of serious harm towards Plaintiff health and safety. While the aforementioned practice of doubling two homicidal and suicidal inmates in the same cell has only been recently implemented... whether it is due to the prison population over-crowding problems such excuse goes against any penalogical justification. The very reason an inmate is placed on Homicidal and suicidal watch because he pose a substantial risk of serious harm to his safety and to the general prison population well being.

In Farmer v. Brennan, Id, the U.S. Supreme Court rejected the petitioner's invitation to adopt an objective test for deliberate indifference. In which hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate safety or health; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exist, and he must also draw the interference. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. ("If the risk is obvious, so that a reasonable man would realize it, we might well infer that the defendant did in fact realize it; while the court caution prisoner litigants that the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of").

For example if an Eighth Amendment risk of inmate attacks was "longstanding, pervasive, well documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus, "must have known about it, then such evidence could be sufficient to permit a trier of [511 U.S. 843] fact to find that the defendant-official had actual knowledge of the risk"

Plaintiff contends that aforesaid claims is in no way conclusive, while since the practice of doubling two mentally ill homicidal and suicidal inmates in the same cell together been implemented there this been increasing numbers of assaults, inmate on inmate attacks compare to the general prison population housed in administrative segregation, such attacks is long standing, pervasive, well

documented and expressly noted by Angola Prison Officials in the past; For example the mentally ill inmate that attacked plaintiff while being doubled up on suicidal and homicidal watch Jazmine Jackson #567682 told Capt. Simon that prior to me moving into said cell with him that he have been attacked at least three times, once by another inmate with a knife, all while being on homicidal and suicidal watch.

Plaintiff further contends that whenever U.S. Congress pass the Prison Rape Elimination Act (PREA) it requires that all correctional facilities officials adopt a zero tolerance approach to eliminate any prison policy that creates an unhealthy sexual assault prison environment.

Nevertheless, such policy of placing two mentally ill homicidal and suicidal inmates in the same cell together practically naked, (e.g. mentally ill suicidal and homicidal inmates are only allow paper gown that does not cover inmate's penis and buttock while moving around the two men cell, which the paper gown easily rips with the slightest movement), violates the (PREA) Act in every sense...

while one must consider Prison Rape is a serious matter and can easily happen to an already mentally ill inmate in such a situation that Angola Prison Official is currently subjecting them to. See Framer v. Brennan Id. The Supreme Court clearly address the above mentioned issue of correctional officials duty to protect inmates from such rape assaults. The court specifically recognizes that "having incarcerated persons [with] demonstrated proclivities for criminally antisocial and in many cases, violent conduct and having stripped him of virtually every means of self-protection and foreclosed their access to officials are not free to let the state of nature take it's course", the Court further acknowledges that prison rape is not constitutionally tolerable ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay their offenses against society") and it [511 U.S. 858] clearly states that prisoners can obtain relief before being victimized, see ante at 1983 ("[A] subjective approach to deliberate indifference does not require a prisoner seeking "a remedy for unsafe conditions [to] await a tragic event [such as an] actual assault before obtaining relief"].Finally, under the court holding prison officials may be held liable for failure to remedy a risk of harm so obvious and substantial that the prison officials must have known about it, see ante, at 1981-1982. While the opinion sent a clear message that prison official must fulfill their affirmative duty under constitution to prevent inmate assaults, including prison rape, or otherwise face a serious risk of being held liable for damages, see ante, at1981-1982 or being required by a court to rectify the hazardous conditions, see ante, at 1983-1984.

Nevertheless the aforementioned clearly shows that Angola Prison Officials are aware Facts which the inference (that doubling up two mentally ill suicidal and homicidal patients up) could be

3

drawn that it pose a substantial risk of serious harm to the safety of the general prison population. While there are Several suicidal and homicidal watch prevention precautions that in places (such as whenever inmates are placed on watch based upon his actions, express that he is homicidal or suicidal or both, Angola Prison Officials take the necessary security steps to protect the safety of said inmates by removing any clothing and items that will present a security or medical risk, out of the inmate possession.

Moreover said inmate is to be placed in a single man cell with a paper gown with a suicidal mattress (along with being under suicide observation) which consist of a security official making a 15 min. rounds on the tier, additionally with an inmate tier walker whom job is to walk the tier and report any inmate suicide attempts to the security official that on duty nevertheless, in accordance to the Dept. Public Safety and Correction Health Care Policy No. HC 38(2) H- which states that the institution may utilize selected inmates as inmate assistants to supplement staff observation as per policy. However, use of inmate observers will not relieve security officers of their obligation to observe and document inmate behaviors at regular intervals. Utilization of inmate observers is strictly discretionary and must be in accordance with A.C.A. Standards.

While the above mentioned suicide prevention precautions is reasonable, however whenever security officials implement such a policy of doubling two mentally ill suicidal and homicidal inmate in the same cell practically naked it goes against such precautions. In which once two mentally ill suicidal and homicidal inmates is placed in the same cell the substantial risk of serious harm that the both can inflict upon each other is deadly (e.g. it would be reasonable to conclude that having two homicidal and suicidal inmates in the cell together the both would conspire to allow each other to brutally attack one another by kicking or ramming ones head against the several iron features in the cell)Such a hypothetical situation is definitely plausible whenever you have two mentally ill suicidal and homicidal inmate bind upon harming themselves...

Furthermore it is reasonable to conclude that despite the policy of making the 15 min. rounds by security officials, an inmate can be brutally assaulted or murder in a matter of seconds.

While plaintiff avert that Angola mental health care non-comply policy is inadequate for the following reasons such as whenever mentally ill inmate refuse their mental health medication over three days said inmate must be placed in administrative segregation until he take such medication or be evaluated by a mental health psychiatrist and it determined that he do not pose a substantial risk of serious harm to himself or the general prison population. Said precautions was never carried out in

4

plaintiff's case, whereas after a week of refusing said anti-psychotic medication olanzapine Plaintiff experienced a mental breakdown during an altercation over a cell phone and attack two female officials while unbeknown to plaintiff which only became aware of the olanzapine withdrawal symptoms via attorney July 23, 2018 that states, "Those who are suffering with olanzapine withdrawal symptoms may be tackling one of the most difficult medication withdrawal, such as an experience of unruly and annoying side effect amongst other harmful side effects, difficult sleeping, olanzapine withdrawal, depression, sweating, tremor, flu like symptoms, anxiety, and muscle pain. Nevertheless in accordance with health care policy no. HC 36(5)D "Serious (major, sever or significant) mental illness (SMI): for the purpose of this policy, SMI is defined as a confirmed diagnosis of at least one of the following:

1.    Major Depressive Disorder

2.    Schizophrenia

3.    Schizo Affective Disorder

4.    Bipolar Disorder

5.    Psychotic Disorder

6.    Sever Anxiety Disorder

7.    Sever Personality Disorder

While Plaintiff was prescribed olanzapine for the diagnosis of schizophrenia, along with citalopram for major depressive disorder whereas Angola Prison mental health dept., have acknowledge that the inadequate treatment of mental ill inmates with serious mental illnesses is considered a serious medical matter which is why the title of the aforesaid policy is name serious mental Illness which add a sense of urgency to the mental care of Angola mental ill inmates. By Angola Prison Official not following none comply mental health policy, it constitute a substantial risk of serious harm to the safety of the general prison population. Whenever the aforementioned none comply is not following mental ill inmate risk harming security officials, or themselves or other inmates while none comply mental health policy is a proactive approach which is very reasonable whenever considering the potential threat to the mental health of inmates whose mental ill, and to the safety of the general prison population

The defendant allowing security officials whose not properly train to pass out mental health medication at incorrect time which interferred with the psychiatrist prescribe directions amounts to deliberate indifference see Estelle, 429 U.S. at 104-05 (emphasis added)

Plaintiff has filed an E.A.R.P. on the several constitutional violations stated herein and the defendant have fail to respond such as having plaintiff evaluated by Angola psychiatrist Dr. Gamble for

5

olanzphine and citalopram withdrawal symptoms treatment, or put a stop to doubling two suicidal and homicidal patience in the same cell or issue an adequate none comply policy. Their refusal amounts to deliberate indifference, in violation of plaintiff's right under the Eighth Amendment. Plaintiff is therefore likely to succeed on the merits in this case.

**2.    Plaintiff face a substantial threat of irreparable harm**

Irreparable harm will result unless an injunction is granted in this case as a result of being denied adequate mental health treatment plaintiff is suffering various withdrawal olanzapine and citalopram symptoms such as massive muscle pain, diarrhea, headaches, nausea, difficulty sleeping, depression, sweating, tremors, flu like symptoms, anxiety. Plaintiff have filled out a sick call several weeks ago and still have not been seen...Pedraza v. Meyer, 919 F. 2d 317, 318-19 (5th Cir. 1990)(refuse to provide treatment for drug withdrawal for four days) Flelder v. Bosshard, 590 F. 2d 105, 107-08 (5th Cir. 1979)

Furthermore Plaintiff have filled out several sick calls for massive low back pain from the injury I suffered during the attack by mental ill inmate while being on suicidal and homicidal watch and only received analgesia balm muscular pain reliever without having received an x-ray or evaluated by a Doctor. As a result of defendant's deliberate indifference, plaintiff will continue to face a substantial risk of serious harm a long as suicidal and homicidal watch inmates are doubled up in the same cell, while Plaintiff is still under mental health evaluation and is subject to be placed on suicidal or homicidal watch doing said evaluation. In which in Farmer v. Brennan supra stated that "It would", indeed, "be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet has happened to them." one does not have to wait the consummation of threatened injury to obtain preventive relief" Pennsylvania v. West Virginia, 262 U.S. 553 593, 43 S. Ct. 658, 663, 67 L. Ed 1117 (1923)(Consistently with this principle, A subjective approach to deliberate indifference does not require a prisoner seeking "A remedy for unsafe conditions to await a tragic event such as an actual assault before relief.")

Plaintiff avert that several other inmates have filed A.R.P. on mentally ill suicidal and homicidal inmates been doubled up in the same cell since said policy been in practice and the Angola Prison officials have shown no effort to stop said practice while plaintiff should not have to suffer more injuries in order to seek this Honorable Court intervention. Every time a mentally ill inmate is placed on homicidal and suicidal watch in the cell with another mentally ill inmate a substantial serious risk of

harm to the safety and health of said inmates is present.

**3.       Any remedy at law for plaintiff injuries would be inadequate**

The Seventh Circuit has explained that in the context of a motion for preliminary injunction. The term "inadequate" does not mean "wholly ineffectual" but rather seriously deficient as a remedy for the harm suffered" Roland Mach CO v. Dresser Indus. Inc., 749 F. 2d 380, 386 (7th Cir. 1984) Here any after-the-fact remedy for the serious injuries that the plaintiff are now suffering would be seriously deficient, where plaintiff is not only suffering massive low back pain but also emotional stress disorder having nightmares inmates practically naked in unhealthy sexual compromised positions. Such attack by an inmate that practically naked is definitely inhuman...while the various olanzapine and citalopram withdrawal symptoms may very well have long term effect on plaintiff physical and mental health, see Jolly v. Coughlin, 76 F. 3d468, 482 (2nd Cir. 1996)(finding that plaintiff sustained irreparable harm" that cannot be adequately compensated monetarily" as a result of being confined in cell without exercise). Federal Statutes and case law restrict the availability of damages to inmates civil rights suits. Preliminary injunctive relief is appropriate to correct this ongoing constitutional violation.

**4.       The threatened harm to Plaintiff outweighs any harm that the injunction may cause Defendants.**

The threat of harm to the plaintiff outweighs any harm that might result to the defendant by a preliminary injunction. As this memorandum has explained, Plaintiff and other inmates at Angola State Penitentiary are exposed to an ongoing substantial risk of serious harm. The relief plaintiff seek is essentially an order compelling defendants to perform their per-existing duties under the U.S. Constitution see Farmer, 511 U.S. at 832-33. The proposed relief is narrowly tailored to remedy the ongoing violation of plaintiffs constitutional rights and to prevent the occurrence of irreparable harm in the future. See 18 U.S.C. § 3626(A) It will not cause defendants any harm.

**5.       The public interest will not be dis-served by a grant of a preliminary injunction.**

Finally, Plaintiff seek a preliminary injunction to protect their rights under the Eighth Amendment. As a general matter, the public interest … is always well served by protecting the constitutional rights of all it's members Reinert v. Hass, 585 F. Supp. 477, 481 (S.D. Iowa 1984) see Also Spartacus Youth League v. Board of Trustees, 502 F. Supp. 789, 804 (N.D. Ill 1980)Finding that "The ultimate public interest lies in the protection of the constitutional rights which plaintiff asserts"

The public interest is not served by defendants current practice of subjecting mental ill inmates to inhuman conditions and treatment of deprivation of basic human need.

7

## CONCLUSION

For these reasons stated herein plaintiff is seeking this court to order an evidentiary hearing along with granting plaintiff an expeditious discovery motion to obtain all the material documents to support plaintiff's claims such as the mental health none comply policy; the policy of doubling suicidal and homicidal inmates up in the same cell; documents on how many inmate on inmate assaults in relation to suicidal and homicidal inmates that doubled up in the same cell together, compared to the general prison population housed in administrative segregation; Plaintiff mental and medical records coupled with it mental medications pill call chart; how many inmates have filed A.R.P. on homicidal and suicidal inmates being placed in the same cell together; previous A.R.P. plaintiff has filed stating that he was not mentally fit to be moved in general population, and the body camera footage of Cpt. Simon which recorded the attack Plaintiff suffered, while after said evidentiary hearing grant plaintiff relief as law demand.

Respectfully Submitted, this _18_ day of _SEPT 2018_

_Calvin Coleman_

Calvin Coleman #
Louisiana State Penitentiary
Angola La., 70712

## AFFIDAVIT/CERTIFICATE OF SERVICES

I, Calvin Coleman, hereby certify that a copy of the foregoing has been served on all parties of record via Louisiana Dept. Public Safety Correction, Mayflower St. Bldg. 1, Box 94304, Capitol Sta. Baton Rouge. La. 70804. Including the Clerk of Court for Middle District by placing a copy in the hands of the classification officer for filing in accordance with the mailbox rule of law filing in accordance with the mailbox rule of law. Submitted this _18_ day of _SEPT_ 2018

8

Calvin Coleman #399534
Louisiana State Penitentiary
Angola La., 70712

**Please Serve;**

Louisiana Dept. Public Safety Correction
Mayflower St. Bldg. 1, Box 94304,
Capitol Sta.
Baton Rouge. La. 70804.

Calvin Coleman #399534
Louisiana State Penitentiary
Angola La., 70712

9